PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| KENYATA D. ZAPATA JR., | ) |
| | ) CASE NO. 4:24-CV-01730 |
| Plaintiff, | ) |
| | ) |
| v. | ) JUDGE BENITA Y. PEARSON |
| | ) |
| TCI OFFICER JEFF SONTAG, *et al.*, | ) |
| | ) **MEMORANDUM OF OPINION** |
| Defendants. | ) **AND ORDER** |
| | ) |

### I.  Background

*Pro se* Plaintiff Kenyata D. Zapata Jr., an Ohio prisoner, has filed an *in forma pauperis* Complaint under 42 U.S.C. § 1983 against eight "TCI/ODRC workers,"[1] including TCI Officers Jeff Sontag, Lee Jacobs, and Craig Lisk; Captain Darnell Bracy; Warden Anthony Davis; Institutional Inspectors Felepa Lowery and Donna Crawford; and Deputy Warden of Operations Brian Evans.  ECF No. 1 at PageID ##: 2, 4.  His Complaint pertains to events that occurred while Plaintiff "inhabited a cell on a TPU range" at TCI in November 2022.  ECF No. 1 at PageID #: 7, ¶ 1.

Plaintiff alleges that on November 13, 2022, while food trays were being passed or collected, Defendant Jacobs approached his cell and opened the food hatch and a "verbal dispute" between him and Jacobs occurred, resulting in Jacobs requesting immediate assistance. ECF No. 1 at PageID #: 11, ¶¶ 20–22.  Plaintiff asserts he requested to speak to the shift

---

[1] TCI refers to the Trumbull Correctional Institution.

(4:24CV1730)

supervisor about a "meal related issue." ECF No. 1 at PageID #: 11, ¶ 23. Plaintiff asserts that the working correctional officer, Defendant Sontag, "approached [his] cell door and food hatch with full intention and sole p[u]rpose to open and close and or slam the foot hatch/cuff port on [his] right hand several times causing [him] substantial injury and pain." ECF No. 1 at PageID #: 12, ¶ 24.

Plaintiff asserts that after this incident, his injury was "not addressed properly" or investigated by "1st shift workers." ECF No. 1 at PageID ##: 12, 13, ¶¶ 25, 29–31. He alleges that "1st shift" staff violated prison policy, procedure, and administrative rules by leaving Plaintiff bleeding in his cell "with intent to go home and leave 2nd shift to address his injury" and complaints four hours later. ECF No. 1 at PageID ##:12–13, 14, ¶¶ 25–31, 34. He asserts that "multiple" working staff "ignored his injury and distress" and that Defendants Bracy and Lisk "placed a shield at his cell with purpose to hide or prevent [him] from receiving help" during first shift. ECF No. 1 at PageID ##: 12, 14, ¶¶ 26, 32.

Plaintiff nonetheless acknowledges he was "seen and evaluated by HCA Hinckle" with respect to his injury during second shift, and that Defendant Davis addressed his injury and obtained a signed written statement from him. ECF No. 1 at PageID ##: 9, 15, 16, ¶¶ 11, 12, 37, 39, 45. He claims, however, that he did not receive the "most sufficient remediable solution." ECF No. 1 at PageID #: 9, ¶ 14. He also claims Mr. Hinckle "provided medical glue" instead of stitches (ECF No. 1 at PageID #:16, ¶ 46); that he was denied transport to OSU hospital for treatment (ECF No. 1 at PageID #: 18, ¶ 51); and that he did not receive stitches until November 30, 2022. (ECF No. 1 at PageID ##: 9, 18 ¶¶ 15, 53). Plaintiff also claims that complaints and grievances he made and submitted to prison officials regarding the incident were not properly addressed or were denied, and that no disciplinary action was taken against any employee for

2

(4:24CV1730)

their treatment of him or for neglecting proper administrative procedures. ECF No. 1 at PageID ##: 10, 17, ¶¶ 17, 18, 49. He asserts: "No employees were disciplined or held accountable by TCI Institutional Inspector, Deputy Warden of Operations, or the ODRC Chief Inspector." ECF No. 1 at PageID #: 17, ¶ 49.

Contending generally that he was subjected to pain and suffering and cruel and unusual punishment in violation of the Eighth Amendment, Plaintiff seeks monetary relief. ECF No. 1 at PageID # 23.

## II. Standard of Review

Although federal courts must construe *pro se* complaints liberally, (*see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)), this principle is not without limits. *See Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011). Plaintiffs proceeding *pro se* must still meet basic pleading requirements, and courts are not required to "conjure allegations on [their] behalf" or create claims for them. *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001).

Federal district courts are expressly required, under 28 U.S.C. § 1915(e)(2)(B), to screen all *in forma pauperis* complaints filed in federal court, and to dismiss before service any such complaint that the court determines is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the dismissal standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) for determining a motion to dismiss under Fed. R. Civ. P.12 (b)(6) governs dismissals for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)).

To avoid a dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting

3

(4:24CV1730)

*Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly,* 550 U.S. at 556). It is not enough for a plaintiff to allege facts consistent with liability. Rather, his allegations must be sufficient to "nudge" his claims "across the line from conceivable to plausible" to avoid dismissal. *Twombly*, 550 U.S. at 570.

### III.    Analysis

Upon review, the Court finds that Plaintiff's complaint fails to state a plausible Eighth Amendment claim upon which he may be granted relief.

First, Plaintiff's Complaint fails to state a plausible Eighth Amendment claim to the extent that he contends his rights were violated with respect to medical care or treatment. Failure to provide adequate medical treatment to a prisoner violates the Eighth Amendment's prohibition against cruel and unusual punishment only when it results from "deliberate indifference" to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

To prove a constitutional claim, a plaintiff must show objective and subjective components. He must show both that he had a medical condition that posed a "substantial risk of serious harm" to him, and, that a prison official acted with "deliberate indifference" to that risk. See *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). In the context of medical care, deliberate indifference "requires more than mere negligence [and] more even than medical malpractice." *Mitchell v. Hininger*, 553 F. App'x 602, 604 (6th Cir. 2014). Consequently, allegations of medical malpractice or negligent diagnosis or treatment are not enough to state a claim. *Jennings v. Al-Dabagh*, 97 F. App'x 548, 549–50 (6th Cir. 2004). Likewise, a prisoner's

4

(4:24CV1730)

disagreement with the treatment he receives is insufficient to rise to the level of an Eighth Amendment violation. *Dodson v. Wilkinson*, 304 F. App'x 434, 440 (6th Cir. 2008); *Mitchell*, 553 F. App'x at 605 (finding a prisoner's "desire for additional or different treatment does not suffice" to make out a claim).

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Instead, a plaintiff must show that the treatment he received was "so woefully inadequate as to amount to no treatment at all" to succeed in an Eighth Amendment claim. *See Mitchell*, 553 F. App'x at 604–05.

Even accepting as true Plaintiff's allegation that he suffered injury requiring medical attention to his hand because of his encounter with Officer Sontag, his Complaint makes clear that he received medical care and treatment. Although Plaintiff claims the care that he received was not the "most sufficient remediable solution" and was not timely but intentionally delayed, these claims amount to negligence. The factual allegations do not support a plausible finding that the treatment he received was "so woefully inadequate as to amount to no treatment at all." Furthermore, other than his own conclusory assertions, Plaintiff has not alleged facts, or submitted verifying medical evidence, plausibly demonstrating that he suffered any actual "detrimental effect" as a result of delayed treatment.

Second, Plaintiff's claim that Defendant Sontag used force against him fails to state a plausible claim under the Eighth Amendment. The Eighth Amendment protects prisoners from the use of excessive force by prison officers. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986). Every governmental action affecting the interests or well-being of a prisoner, however, is not

5

(4:24CV1730)

subject to Eighth Amendment scrutiny. "After incarceration, only the 'unnecessary and wanton infliction of pain,' constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle*, 429 U.S. at 103).

As stated earlier, an Eighth Amendment excessive force claim requires a prisoner to demonstrate objective and subjective components. *See, e.g.*, *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir.1993). The subjective component of a claim focuses on the state of mind of the prison official in question. In the excessive force context, the relevant inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (internal quotation marks omitted); *Gravely v. Madden*, 142 F.3d 345, 349 (6th Cir. 1998) (stating the same).

In making this assessment, courts will consider many factors, including "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley*, 475 U.S. at 321. Courts may also consider the circumstances "as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." *Id.* A use of force analysis must also be made in the context of constant admonitions by the Supreme Court that courts must accord deference to prison officials as they seek to maintain order and discipline in prison settings. *See id.* at 321–22.

Plaintiff alleges that Officer Sontag "approached [his] cell door and food hatch with full intention and sole p[u]rpose to open and close and or slam the foot hatch/cuff port on [his] right hand several times causing [him] substantial injury and pain." ECF No. 1 at PageID #: 12, ¶ 24. Even accepting that Officer Sontag used the force Plaintiff describes in this statement as true and

6

(4:24CV1730)

that he sustained injuries as a result, Plaintiff's statement alone is insufficient to "nudge" an Eighth Amendment excessive force claim over the line from conceivable to plausible under the factors courts consider in determining excessive force claims. This is especially the case given Plaintiff's allegation of the force Office Sontag used against him after Officer Jacobs had just called for immediate back-up assistance following a "dispute" with Plaintiff. Conclusory allegations of excessive force are not enough to state a claim, and the Court does not find Plaintiff's statement alone sufficient to support a plausible finding that Officer Sontag used excessive force against him maliciously and sadistically to cause harm rather than to maintain or restore discipline. *See e.g.*, *Bloodworth v. Pouperd*, No. 22-3445, 2022 WL 19829999 (6th Cir. Dec. 8, 2022) (affirming the district court's dismissal where plaintiff did not allege facts which could support an inference that the defendant acted "maliciously and sadistically" intending to cause harm).

Plaintiff also fails to state a plausible claim about the November 13th incident's reporting, investigation, and procedure. The Eighth Amendment guarantees a prisoner none of those things. *See Miller v. Bock*, 55 F. App'x 310, 311–12 (6th Cir. 2003) ("A combination of knowledge of a prisoner's grievance and failure to respond or remedy the complaint is insufficient to impose liability upon supervisory personnel under § 1983"); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (finding a prisoner has "no inherent constitutional right to an effective prison grievance procedure").

Accordingly, to the extent that Plaintiff is dissatisfied with the investigation of his concerns and responses to his complaints and grievances, his Complaint fails to characterize a plausible Eighth Amendment claim upon which he may be granted relief.

7

(4:24CV1730)

## IV. Conclusion

For all of the foregoing reasons, Plaintiff's Complaint (ECF No. 1) fails to state a plausible Eighth Amendment claim and is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). The Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

| | |
|---|---|
| February 27, 2025 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |